UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

    Plaintiff,

v.                                  CASE NO:

BAYFRONT TOWER CONDOMINIUM
ASSOCIATION RESIDENTIAL, INC.,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Underwriters") file suit against BAYFRONT TOWER CONDOMINIUM ASSOCIATION RESIDENTIAL, INC. ("Association") and allege:

## NATURE OF THE ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 and reimbursement of defense attorney's fees and costs. More specifically, at issue is whether annoyance from a noisy gym constitutes "property damage" under a commercial general liability policy that defines "property damage" as "physical

injury to tangible property." As a matter of law, Underwriters submit noise is not property damage.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiffs and the defendant, and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

3. Venue is proper in this district because Underwriters issued and delivered the policy to their named insured, the Association, in this district, the underlying action was in this district, the defendants are residents of this district, and otherwise "a substantial part of the events … giving rise to the claim[s] occurred in this district." *See* 28 U.S.C. § 1391(b)(2).

4. All conditions precedent occurred, were performed, or were waived.

## THE PARTIES

5. Underwriters are an unincorporated association of the following syndicates:

   a. Syndicate 1458, which is managed by RenaissanceRe Syndicate Management Ltd. ("RenRe"). RenRe has one subscribing member: RenaissanceRe Corporate Capital (UK) ("RenRe Capital"). RenRe Capital is incorporated in the United Kingdom with its principal place of business in

London, England at 125 Old Broad Street, 18th Floor, London, EC2N 1AR;

b. Syndicate 2001, which is managed by MS Amlin Underwriting Limited ("Amlin"). Amlin has one subscribing member: MS Amlin Corporate Member Limited ("Amlin Corporate"). Amlin Corporate is incorporated in the United Kingdom with its principal place of business in London, England. The address of both Amlin and Amlin Corporate is The Leadenhall Building, 122 Leadenhall Street, London, UK EC3V 4AG; and

c. Syndicate 1084, which is managed by Chaucer Syndicate Ltd. ("Chaucer"). Chaucer has one subscribing members: Chaucer Corporate Capital (No. 3 ) Ltd. ("Chaucer Corporate"). Chaucer Corporate is incorporated in the United Kingdom with its principal place of business in London, England at 52 Lime Street, London EC3M 7AF.

Underwriters are accordingly citizens of the United Kingdom. For purposes of this action, Underwriters issued an insurance policy to the Association.

6. The Association is a Florida Not For Profit Corporation with its principal place of business in St. Petersburg, Florida. The Association seeks coverage for a noise complaint under their policy with Underwriters.

## THE NOISE COMPLAINT

7. The Association operates the Bayfront Tower Condominium, including the common areas on the 28th floor of the building.

8. In 2016, the Association altered the common areas in the 28th floor.

9. The Association constructed 356 additional square feet of fitness center over the unit owned by Ted and Marlene Starr.

10. As part of the project, the Association removed sound suppressing flooring from the 28th floor.

11. These alterations resulted in noise complaints by the Starrs that began in August 2016.

12. On 09/16/2016, the Association's board held a meeting to discuss the noise emanating from the newly constructed fitness center. (A copy of the Notice of Board of Directors Meeting is attached as Exhibit "A.")

13. Michael Keane of Keane Acoustics attended the meeting. It was Keane's opinion that "noise radiated very strongly (compared to other surfaces) from the columns in the two corner units tested." (A copy of Michael Keane's 09/08/2016 email is attached as Exhibit "B.")

14. The Association did not remedy the noise from the newly constructed fitness center.

15. Accordingly, on 05/23/2018, the Starrs filed a petition for arbitration with the Florida Department of Business and Professional Regulations ("DBPR"). (A copy of the Petition for Arbitration is attached as Exhibit "C.")

16. The Starrs alleged that they "had to endure continued and severe noise and acoustical problems" from the fitness center. (*Id*. at 6.)

17. The Starrs' petition did not allege they suffered sickness or disease from the noise.

18. The Starrs did not allege physical injury to tangible property from the noise.

19. The Starrs did not allege that they were unable to use their unit from the noise.

20. All the Starrs sought was an order directing the Association to abate the noise nuisance created by the newly constructed fitness center.

## LITIGATION OF THE NOISE COMPLAINT

21. On 01/14/2019, the DBPR issued its Final Order After Hearing. It ordered the Association to remediate the noise situation. (A copy of the Final Order After Hearing is attached as Exhibit "D.")

22. Dissatisfied with the DBPR's order, the Association sought a trial *de novo* in circuit court, in Pinellas County, Florida.

23. The circuit court affirmed the DBPR's order. (A copy of the circuit court's order is attached as Exhibit "E.")

24. Again, dissatisfied with the outcome, the Association appealed the circuit court's order to the Second District Court of Appeal, which affirmed the DBPR's order. (A copy of the Second District's order is attached as Exhibit "F.")

25. Underwriters paid all of the Association's defense fees and costs up to the conclusion of the trial *de novo* under a complete reservation of rights, which the Association accepted.

## THE UNDERWRITERS POLICY

26. Underwriters issued a commercial general liability policy to the Association as the Named Insured, bearing Policy Number DCL00139-00, and effective from 03/01/2017 to 03/01/2018. (A copy of the policy is attached as Exhibit "G.")

27. Underwriters incurred $91,912.77 defending the Association for a noise complaint under a commercial general liability policy that provides coverage for property damage.

## COUNT I – NO BODILY INJURY OR PROPERTY DAMAGE

28. Underwriters incorporate paragraphs 1 through 27.

29. The policy's Insuring Agreement provides in pertinent:

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(*See* Policy, at Pg. 1/16.)

30. The Starrs filed a petition for arbitration seeking to abate a noise nuisance created by the building's newly constructed fitness center.

31. The Starrs did not seek damages because of bodily injury or property damage.

32. Accordingly, there is no coverage for the Association under the Underwriters policy.

## COUNT II – NO COVERAGE
## THE ASSOCIATION KNEW OF THE NOISE COMPLAINT

33. Underwriters incorporate paragraphs 1 through 27

34. The policy's Insuring Agreement provides in pertinent:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    **b.** This insurance applies to "bodily injury" and "property damage" only if: …

    **(1)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(*See* Policy, at Pg. 1/16.)

35. On 09/16/2016, the Association's board held a meeting to discuss the noise emanating from the newly constructed fitness center. (*See* Ex. "A.")

36. Michael Keane of Keane Acoustics attended and opined that "noise radiated very strongly (compared to other surfaces) from the columns in the two corner units tested."

37. Accordingly, there is no coverage for the Association under the Underwriters policy. (*See* Ex. "B.")

**COUNT III – THE CONSTRUCTION OR DEVELOPMENT EXCLUSION**

38. Underwriters incorporate paragraphs 1 through 27.

39. The policy includes a Construction or Development Exclusion that provides:

**EXCLUSION- CONSTRUCTION OR DEVELOPMENT**

A. This insurance does not apply to, nor shall we have any duty to defend, any claim or "suit" arising out of any Construction or Development, including the rendering of or failure to render any professional services by you or on your behalf in any way related to such Construction or Development.

However, this exclusion does not apply to Maintenance or Renovation.

B. As used in this endorsement, Construction or Development means:
  1. Any structural addition, or structural alteration other than Maintenance or Renovation, to any building, structure or real property;

  2. Complete or partial construction or demolition of any building or other structure; or

  3. Site preparation, other than planning or surveying, related to any of the above.

C. As used in this endorsement, Maintenance or Renovation means any alteration, improvement, renovation, maintenance, repair or refurbishing done to an existing structure or building as part of the insured's customary operations. Maintenance or Renovation does not include:

1. Any structural alteration that involves changing the external dimensions of any building or structure;

2. Any demolition, alteration or movement of any load-bearing wall or load-bearing structure of any building or structure, or alteration that adversely affects the ability of any load-bearing wall or load-bearing structure to support weight.

(*See* Form DCHGL034 0416.)

40. The Association constructed 356 additional square feet of fitness center directly above the unit owned by the Starrs.

41. The construction gave rise to the Starrs' noise complaint.

42. Accordingly, there is no coverage for the Association under the Underwriters policy.

## **RELIEF REQUESTED**

Underwriters respectfully request that this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Underwriters policy;

b. Declare the following:

i. There is no coverage for the Association because the Starrs did not seek damages because of bodily injury or property damage;

ii. There is no coverage for the Association because it knew of the Starrs' noise complaint before the Underwriters policy incepted;

iii. There is no coverage for the Association because the Construction or Development exclusion applies; and

iv. Underwriters are entitled to a reimbursement of the $91,912.77 they spent defending the Association because there is no coverage.

c. Award Underwriters all costs incurred to prosecute this action, as well as any other relief this Court deems equitable, just, and proper.

Dated: April 20, 2022

Respectfully submitted,

/s/SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
Sina.Bahadoran@clydeco.us
**SERGIO BUENO**
Florida Bar No. 112401
Sergio.Bueno@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646